The appellant, Robert Battles, Jr., was convicted of failing to obey an order of a police officer, a violation of City of Mobile Ordinance no. 39-54, of the Mobile City Code. He was fined $250 plus court costs.
 I.
The appellant asserts that Ordinance no. 39-54 is unconstitutional both facially and as applied to his case. That ordinance provides:
 "(a) It shall be unlawful and an offense against the city for any person to fail to obey the direction or order of a member of the police department of the city while such member is acting in an official capacity in carrying out his duties."
The appellant asserts that Ordinance no. 39-54 is unconstitutionally vague. According to the appellant, the ordinance does not provide sufficient notice of the proscribed conduct to those subject to its provisions. He quotes the United States Supreme Court: "`[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.'" Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618,83 L.Ed. 888 (1939), quoting Connally v. General Constr. Co., 269 U.S. 385,46 S.Ct. 126, 70 L.Ed. 322 (1926).
Although the cases he cites address vagueness, the appellant's real contention appears to be that Ordinance no. 39-54 is overbroad. The Alabama Supreme Court stated in Ross Neely Express, Inc. v. Alabama Dep'tof Envtl. Management, 437 So.2d 82, 85 (Ala. 1983):
 "Statutes and regulations are void for overbreadth if their object is achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. See Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967)." *Page 500 
We have previously held that for a statute or regulation to be held overbroad, it must potentially encroach upon First Amendment rights.Jackson v. State, 570 So.2d 874, 875 (Ala.Cr.App. 1990). The appellant does not state which, if any, protected freedoms Ordinance no. 39-54 may encroach upon, but he argues that the language of the statute requires persons to obey unlawful as well as lawful orders.
The appellant argues that Ordinance no. 39-54 is unconstitutional because it fails to limit itself to "lawful" orders. As the appellant notes, although there is no caselaw concerning Ordinance no. 39-54, that ordinance is very similar to Section 47 of Act No. 516, 1949 Ala. Acts, approved August 30, 1949, now codified at § 32-5A-4, Ala. Code 1975,[1] which was construed by this Court in Coughlin v. State,56 Ala. App. 225, 320 So.2d 739 (1975). This Court did not hold that statute to be unconstitutionally vague or overbroad; in fact, it does not appear that these issues were even raised. Coughlin's conviction was reversed, not because of any vagueness or overbreadth of the statute, but rather because the statute itself required that the order of the policeman[2] be "lawful" and that it be "directly related to the direction, control or regulation of traffic" and because the State failed to present evidence indicating that the order was related to traffic control. 320 So.2d at 742.
The appellant concedes that the statute at issue in Coughlin was constitutional as applied in that case, but argues that the ordinance in the present case is distinguishable because it is broader in scope. The ordinance in the present case differs from the statute involved inCoughlin in that it does not explicitly require that the order be lawful and it was not intended to be limited to traffic control. According to the appellant, this Court concluded in Coughlin that the statute was not unconstitutional, precisely because of the language limiting its scope to lawful orders related to traffic control. This Court stated, "Thus we must attempt to give Section 47 a field of operation in relation to the purpose and intent of Act No. 516, or else it is constitutionally obnoxious." 320 So.2d at 742. The appellant implies that this language leads to the conclusion that, without the narrow construction that the only lawful orders are, those related to traffic control, the statute would have been held to be unconstitutionally overbroad.
However, this Court held in Coughlin that Section 47 must be construed in light of the purpose and intent of Act No. 516, which was a traffic control act, because Art. 4, § 45, Constitution of Alabama 1901, requires that each act have one clearly specified subject and that each provision of the Act relate to "one major or comprehensive subject." 320 So.2d at 742. Because Section 47 was a provision of an act that specifically related to the area of traffic control, it could not be applied to Coughlin, who refused to obey an order that was completely unrelated to traffic control. 320 So.2d at 741-42. This holding is irrelevant to the question whether Section 47 was unconstitutionally overbroad.
The appellant also cites Shuttlesworth v. City of Birmingham,382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965), in support of his argument that Ordinance no. 39-54 is unconstitutional. Shuttlesworth was convicted of violating an ordinance of the City of Birmingham that provided: "It shall be unlawful for any person to refuse or fail to comply with any lawful order, signal or direction of a police officer."382 U.S. at 88, 86 S.Ct. 211. As this Court stated in *Page 501 Coughlin the United States Supreme Court held that a narrow construction of the literal language of the provision, derived from the provision's enactment. as part of traffic control legislation, saved it from being held unconstitutional. 382 U.S. at 93, 86 S.Ct. 211. However, unlike this Court in Coughlin the Supreme Court discussed the overbreadth problems with the ordinance: "Like the provisions of § 1142 discussed above, the literal terms of this ordinance are so broad as to evoke constitutional doubts of the utmost gravity." Id. When discussing § 1142, another provision which Shuttlesworth was charged with violating, the Court stated:
 "Literally read, therefore, the second part of this ordinance says that a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration. It `does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat.' Cox v. State of Louisiana, 379 U.S. 536, 559, 579, 85 S.Ct. 453, 466, 469, 476, 13 L.Ed.2d 471, 487 (separate opinion of Mr. Justice Black). Instinct with its ever-present potential for arbitrarily suppressing First Amendment liberties, that kind of law bears the hallmark of a police state."
(Footnotes omitted.)
Just like the language of the Birmingham ordinance in Shuttlesworth, the language of Ordinance no. 39-54 appears to give complete discretion to the police officer. The provision contains no requirement that the police order that must be obeyed be "lawful" and there is no indication that it was intended to be limited to traffic control. The appellant argues that these considerations render the ordinance unconstitutionally vague and overbroad because the ordinance does place unlimited discretion in the hands of a police officer. The literal terms of the ordinance appear to require subjects to comply with, or to submit to, any conceivable order, including one that might encroach upon their constitutional rights.
Although a peaceful protester, for example, might have a claim that Ordinance no. 39-54 is overbroad as applied to them, the appellant does not have standing to make such a challenge. Generally speaking, in order to challenge a statute for overbreadth, one "must be directly affected by the statute's alleged overbroad aspects." Kirby v. Mobile County Comm'n,564 So.2d 447, 450-51 (Ala.Civ.App. 1990). Under the facts of this case, it is apparent that the appellant was not "directly affected" by any overbreadth of Ordinance no. 39-54.
The evidence at trial tended to show that on February 22, 1997, City of Mobile Police Officers James Graham and Michael Womack were patrolling the appellant's neighborhood after getting a statement from a homeowner in the area giving a description of a prowler who had been reported to be lurking around the area. Officer Womack passed a vehicle proceeding without its headlights on and with a severely cracked windshield. Officer Womack made a U-turn and watched the car back into a yard. After pulling into the driveway, Officer Womack saw the appellant get out of the vehicle and approach the door to the house. Standing in front of his car, Officer Wornack asked the appellant to come to his car to answer questions regarding his headlights. At this point Officer Womack believed the appellant matched the description of the prowler. The appellant, using profanity, responded by saying that he was in his yard and that he did not have to answer any questions. Officer Womack asked the appellant three or four times to answer some questions, but the appellant continued to insist that he did not have to answer any questions and continued to use profanity. Officer Womack approached the front door and reached for the appellant's arm. The appellant then began twisting and turning, pulling away from Officer Womack's grasp. Officer Graham arrived at the scene; he told Officer Womack to "clear" and then sprayed pepper spray at the appellant. *Page 502 
The officers attempted to control the appellant, getting him almost to Officer Graham's car. However, the appellant threw off his jacket and escaped their grasp. The appellant's father, mother, brother, and sister came out into the yard, and the appellant ran into the house. Officer Graham followed him into the house, again attempting to spray him, filling the house with pepper spray. Eventually, backup officers arrived at the scene, and the appellant was arrested and charged with failure to obey an order, disorderly conduct, and resisting arrest. The appellant was convicted in the municipal court of resisting arrest and failure to obey the officer's order. After appealing to the circuit court, the appellant was convicted of failure to obey the officer's order.
The appellant cannot claim that he was "directly affected" by the overbreadth of the ordinance because, regardless of how the ordinance is construed, Officer Womack clearly had the authority to ask the appellant to answer questions about his headlights. The appellant had been driving at night without his headlights, a traffic infraction. Opinion of theClerk; No. 18, 364 So.2d 672, 673 (Ala. 1978). Under Ala. Code 1975, § 32-6-9, Officer Womack had the authority to ask the appellant for his driver's license. Sly v. State, 387 So.2d 913, 915 (Ala.Cr.App. 1980). Although Officer Womack made no such request in this case, he testified that he did ask the appellant to answer questions regarding his headlights. Under § 32-6-9, this was clearly a lawful order. Although we might not be able to construe Ordinance no. 39-54 as narrowly as § 32-6-9 because its terms appear to apply also to nontraffic situations, such potential overbreadth does not affect the appellant's case. Unlike Coughlin and Shuttlesworth, this case involves a traffic-related order. The mere fact that the appellant's car was parked in his own yard does not change this fact. The appellant had been driving without his headlights on and Officer Womack wanted to ask him some questions about this situation. Therefore, regardless of the overbreadth of Ordinance no. 39-54, the appellant had the legal duty to follow Officer Womack's orders; his refusal to do so was a violation of the ordinance. The application of Ordinance no. 39-54 to the appellant was not unconstitutional.
There exists an exception to the "general rule that one who is not directly affected by the overbreadth of a statute lacks standing to challenge the application of the statute to himself. When "there is a realistic danger that the rule will significantly compromise recognized First Amendment protections of parties not before the court," a person can show that a statute is unconstitutionally overbroad on its face and should be struck down completely. Kirby v. Mobile County Comm'n,564 So.2d 447, 451 (Ala.Civ.App. 1990). However, to prevail on such an argument, one must show that the overbreadth is both "real" and "substantial." Id. The appellant has failed to show that City of Mobile police officers will use Ordinance no. 39-54 in a manner that encroaches upon First Amendment protections. The trial court interpreted the ordinance to require by implication that the police officer's order be "lawful" before any duty to follow the order is created. Under such a construction, any order that encroaches upon First Amendment protections would be deemed "unlawful" and would therefore fall outside the parameters of the ordinance. The appellant has failed to show that Ordinance no. 39-54 is unconstitutional on its face.
 II.
The appellant next contends that Ordinance no. 39-54 violates the appellant's right to equal protection. According to the appellant, Officer Graham pepper sprayed his house because his family is the only black family in an otherwise white neighborhood. The appellant argues that this conclusion is supported by a "racial slur" uttered by Officer Graham: "[The appellant] said [he] was in his MF yard, *Page 503 
which is a household name for the Battles" [sic].
The appellant, however, has failed to show how the ordinance itself violated any of his rights to equal protection. Its terms are facially neutral, applying equally regardless of race or any other classification. In order to show that such a facially neutral statute has been applied unequally, the appellant must show intentional discrimination. Washington v. Davis, 426 U.S. 229, 239, 96 S.Ct. 2040,48 L.Ed.2d 597 (1976). There is no indication of intentional racial discrimination in Officer Graham's statement. There is no indication that he made this "MF" reference based upon the appellant's race, rather the record appears to support the conclusion that Officer Graham was referring to the appellant's language and behavior rather than his race.
The appellant argues that Officer Graham would not have used pepper spray in the appellant's house if the appellant was white. However, the appellant's refusal to answer questions occurred before Officer Graham used the pepper spray and was clearly not the result of the pepper spraying. Therefore, regardless of whether Officer Graham's use of the pepper spray violated any of the appellant's constitutional rights, the appellant's conviction for violating Ordinance no. 39-54 was proper.
 III.
The appellant finally contends that the trial court erred by excluding evidence of a pertinent trait of character pursuant to Rule 404 (a)(2), Ala.R.Evid. According to the appellant, Officer Graham was the alleged "victim" of the appellant's refusal to obey the order and resisting arrest and Rule 404 (a)(2), he argues, allows him to present evidence showing that Officer Graham had racist and violent tendencies. The doctrine that evidence of a victim's character is admissible in homicide or assault cases involving claims of self-defense has been significantly broadened with the adoption of Rule 404 (a)(2).
We need not address the actual scope of Rule 404 (a)(2), however, because, even if the evidence of Officer Graham's character had been admissible, the exclusion of that evidence was harmless. The appellant was acquitted of the charge of resisting arrest, and the evidence shows that the appellant had already refused to obey Officer Womack's order to answer questions before Officer Graham arrived on the scene. Therefore, evidence of Officer Graham's character would have had no effect on the appellant's conviction for refusal to obey an order. It is clear beyond a reasonable doubt that excluding this evidence, even if improper, did not contribute to the verdict and was therefore harmless. Chapman v.California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The appellant's conviction for refusal to obey, in violation of Ordinance no. 39-54, is due to be affirmed.
AFFIRMED.
LONG, P.J., and COBB, BROWN, and BASCHAB, JJ., concur.
[1] The language of § 32-5A-4, Ala. Code 1975, which is identical to the language of the statute construed in Coughlin, reads:
 "No person shall willfully fail or refuse to comply with any lawful order or direction of any police officer or fireman invested by law with authority to direct, control, or regulate traffic."
[2] The order in Coughlin was made by a special deputy.